DAVID ROSENGARD, Plaintiff-Appellant, v. C. JOHN McDONALD *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—0775

Opinion filed October 5, 1990.

Steven J. Rosenberg, P.C., of Chicago, for appellant.

Davis, Miner, Barnhill & Galland, P.C., of Chicago (George F. Galland, Jr., of counsel), for appellees.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff David Rosengard appeals from an adverse judgment in his common law negligence action against a broker-dealer who arranged his purchase of limited partnership stock, stock which later became worthless. The trial judge denied plaintiff's motion to file a third amended complaint against the broker-dealer, Ogilvie & Taylor Securities Corp., finding plaintiff failed to state a valid cause of action.

At issue here is whether the trial judge erred when he refused to permit plaintiff to file his third amended complaint because it failed

to plead facts showing: (1) a legal duty of ordinary care running to plaintiff from defendant and (2) defendant's acts were the proximate cause of plaintiff's alleged damages.

In 1985, plaintiff David Rosengard invested as a limited partner in Gateway Center Building Investors, Ltd., a partnership formed to buy and rehabilitate a building in St. Louis. Ogilvie & Taylor sold interests in the project to Illinois residents. The project was financed by a loan from Mellon Bank and by $6 million in limited partner assets. Each limited partner was asked to provide to the bank a guarantee in the amount of his investment along with an investor subscription document. The subscription document contained personal financial information about the prospective investor. Rosengard invested $48,475.23 and executed a guarantee to the bank that would make him personally liable to Mellon for that same amount if Gateway defaulted on the loan. Rosengard contends that Ogilvie & Taylor incorrectly filled out the investor profile on him by including an item that stated he already had an interest in another limited partnership worth $200,000. Rosengard contends he never told Ogilvie & Taylor this information and that it was untrue. He contends further that Ogilvie & Taylor erred in including this information in his investor subscription form. When it was submitted to the bank, the bank relied on it as a basis for qualifying him as a limited partner. Rosengard sued when the investment went sour.

On December 17, 1987, Rosengard filed a common law negligence suit against four defendants: Michael Bansley, Rosengard's accountant; Ogilvie & Taylor Securities Corp., the broker-dealer through which Rosengard purchased his partnership interest; Ameritas, Inc., the general corporate partner for Gateway; and C. John McDonald, the developer, president, director and sole shareholder of Ameritas, Inc.

Default orders were entered against defendants McDonald and Ameritas, Inc., and the case against them is not at issue here.

On June 16, 1988, plaintiff's case was dismissed with leave to amend. Plaintiff filed a first amended complaint August 5, 1988, and defendant Ogilvie & Taylor subsequently filed a motion to dismiss.

On January 10, 1989, the trial judge entered an order granting Ogilvie & Taylor's motion to dismiss the first amended complaint filed against it. The order provided that plaintiff could take additional discovery and seek leave to file a second amended complaint. The order also stated that the dismissal would become final July 8, 1989. A similar order was entered February 23, 1989, after Bansley moved to dismiss the complaint against him.

On February 24, 1989, a second amended complaint was filed, naming only McDonald and Ameritas as defendants. No further pleadings were filed against Bansley.

On September 21, 1989, plaintiff moved to file a third amended complaint against Ogilvie & Taylor. We note here that the parties and the trial court call this document a "third amended complaint" when in fact plaintiff merely sought to add an additional count to the second amended complaint. This count named Ogilvie & Taylor as a defendant and was therefore a supplement to the second amended complaint. Since it was called a third amended complaint at the trial court level, however, we use that term here for the sake of simplicity.

On February 6, 1990, the trial judge denied plaintiff's motion to file a third amended complaint. The court order stated: "[F]inal judgment is entered in this matter against plaintiff and in favor of Ogilvie & Taylor. The court expressly finds pursuant to Supreme Court Rule 304(a) that there is no just reason for delay and directs that final judgment enter as above specified."

On appeal, plaintiff contends the trial judge erred in denying plaintiff's motion to file a third amended complaint.

■ It is within the sound discretion of the trial court to permit or refuse an amendment to pleadings at any time before final judgment, and its decision will not be disturbed on review absent an abuse of discretion. *Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 187, 542 N.E.2d 402, 410.

On February 6, 1990, the trial judge held that plaintiff failed to plead facts that showed a legal duty of ordinary care running to plaintiff from Ogilvie & Taylor. The court also found the third amended complaint, "like the previously-dismissed Count II of the first amended complaint, fails to plead facts showing that the alleged acts of Ogilvie & Taylor were the proximate cause of the damage alleged."

■ We note here, however, that when the trial judge dismissed the first amended complaint, he ordered that a transcript of his reasoning be added as part of the record. The transcript is not part of the record. It is the appellant's responsibility to make sure the record on appeal is complete. A reviewing court will not consider anything that is not contained in the record. *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 564, 532 N.E.2d 493, 498.

Plaintiff cites two cases in support of his right to amend his pleading to add a claim of common law negligence, *Duhl v. Nash Re-*

*alty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267, and *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 214 N.E.2d 612. In *Duhl*, the court reinstated a dismissed cause of action for negligent misrepresentation where plaintiffs alleged they justifiably relied on information supplied by a real estate broker concerning the value of their home and how quickly it might sell. In *Citizens*, the court found defendant liable on a theory of negligent misrepresentation when a salesman for a construction company was ordered by the company president to advise purchasers that the homes were free of construction loans when in fact they were not.

In both cases, the court looked to the Restatement of Torts to help it determine the requirements for common law negligence. The Restatement (Second) of Torts has similar wording. It states: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts §552 (1977).

■ Defendant argues at the outset that the amended complaint contains no allegation of damages as do other counts in the complaint. To determine whether a cause of action has been stated, the whole complaint must be considered, rather than taking a myopic view of a disconnected part. *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438, 546 N.E.2d 580, 585.

The threshold question we must consider is whether plaintiff's complaint alleges a duty of care running from defendant to plaintiff.

Plaintiff contends his third amended complaint was sufficient to show the required duty of care. In the third amended complaint, plaintiff alleged Ogilvie & Taylor "supplied information to plaintiff for his guidance in connection with an investment" and "owed a duty to plaintiff to exercise due care and competence in obtaining and communicating information to plaintiff." Plaintiff further contends he was seeking expert guidance and trusted and relied on defendant. Plaintiff argues he was never told to be wary of the fact that defendant was no more than a selling agent for Gateway. Plaintiff argues that defendant, just like the real estate broker in *Duhl* and the salesman in *Citizens*, owed a duty to exercise reasonable care.

Defendant argues, however, that to impose a common law duty of ordinary care from salesman to potential purchaser would violate

the principles courts use to determine whether a duty of care should be implied. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) To impose such a duty, plaintiff urges, would invite negligence suits whenever a purchase does not turn out to the buyer's satisfaction.

Instead, defendant contends a more recent Illinois case controls the court's interpretation of what allegations are required to support a cause of action for common law negligence. (*Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 440 N.E.2d 282.) In that case, the plaintiff consulted IBM and a software company on equipment and software it wanted to purchase. Based on representations by the two companies' representatives, plaintiff bought computer hardware and software that was unsatisfactory. The plaintiff sued, but the court, using the Restatement (Second) of Torts in its analysis, held that lawsuits for negligent misrepresentations "are limited to situations involving one who in the course of his business or profession supplies information for the guidance of others in their relation with third parties." *Black, Jackson & Simmons*, 109 Ill. App. 3d at 136.

Defendant Ogilvie & Taylor argues that it is no different than the sales officials in *Black* for it was acting as Gateway's Illinois sales office, soliciting investors for its principal. Defendant argues that this "third party" approach also is supported in Federal court cases (*National Can Corp. v. Whittaker Corp.* (N.D. Ill. 1981), 505 F. Supp. 147; *Rankow v. First Chicago Corp.* (7th Cir. 1989), 870 F.2d 356). We need not go into these cases here because we have adequate controlling State law.

As further proof that Ogilvie & Taylor's actions were solely as a sales official for Gateway, defendant notes that plaintiff hired his own accountant to help him deal with third parties and never paid Ogilvie & Taylor for its advice. Plaintiff's complaint does not allege he went to defendant for advice. Defendant also urges the court to consider the public policy ramifications of imposing a duty of ordinary care from sellers to buyers.

Plaintiff argues in response, however, that *Black* is distinguishable because defendant here went further than did the computer sales officials. Defendant here prepared false subscription documents, plaintiff argues, and he relied on defendant's expertise in both recommending an investment and in filling out the documents.

Plaintiff also distinguishes *Black* from this case by arguing that computer sales people collect no commissions as a securities broker-

dealer would. Plaintiff argues that "a broker-dealer will be looking to him for his commission insofar as securities customers typically expect to pay a commission to the broker." Plaintiff admits he paid no commission but argues that defendant still should not be considered Gateway's sales official.

■■ ■ Plaintiff's argument on this point is unpersuasive, particularly in light of the fact that he admits defendant was a selling agent for the limited partnership and that he paid no commission to defendant. We find *Black* to be the controlling law. The trial judge's decision was not in error when he found plaintiff failed to allege that defendant owed him a duty of ordinary care.

Even assuming a duty existed, plaintiff fails to show that he would not have been injured but for defendant's actions.

Plaintiff alleges defendant violated its duty by negligently filling out his investors subscription document and by failing to describe the risks he might face, particularly his exposure to Mellon Bank. Plaintiff alleges he never provided to anyone information on the phantom $200,000 limited partnership investment and did not have such an investment. The erroneous information prompted his acceptance as a limited partner when in fact he was not otherwise qualified, plaintiff alleges.

In its order, the trial court found the third amended complaint, "like the previously-dismissed Count II of the first amended complaint, fails to plead facts showing that the alleged acts of Ogilvie & Taylor were the proximate cause of the damage alleged." Pleadings are to be liberally construed with a view to doing justice between parties, but that does not lessen the obligation of the plaintiff to set out facts necessary for recovery under the theory asserted in the complaint. *Kirk*, 117 Ill. 2d at 516.

Defendant argues that its conduct did not cause plaintiff's losses, but rather that a subsequent event caused any damage plaintiff may have suffered. Defendant contends it did no more than sell Gateway as an investment. The amended complaint fails to allege any connection between defendant's conduct and Gateway officials' subsequent alleged misconduct or conversion which caused the partnership to fail 18 months after plaintiff invested in the project.

■■ Where a negligent act or omission does nothing more than furnish a condition which makes an injury possible, but the injury is caused by the subsequent independent act of a third person, the two acts are not concurrent and the condition is not the proximate cause of the injury. (*Storen v. City of Chicago* (1940), 373 Ill. 530, 533-34, 27 N.E.2d 53, 79.) A more recent case, which relied on *Storen*, noted

that in Illinois, a distinction is made between the proximate cause of an injury and a condition which provides an opportunity for the causal agency to act. *Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 275, 533 N.E.2d 75, 79.

■ Defendant urges this court to find *Lane* and *Storen* dispositive of the proximate cause issue. Defendant argues further that Federal cases interpreting Federal securities law say a plaintiff must prove both "transaction causation" and "loss causation." A Seventh Circuit Court of Appeals decision describes the two terms: transaction causation proves that defendant's conduct caused plaintiff to enter into the transaction whereas loss causation proves defendant's conduct "touches upon the reasons for the investment's decline in value." (*LHLC Corp. v. Cluett, Peabody & Co.* (7th Cir. 1988), 842 F.2d 928, 931.) Where plaintiff is induced to purchase securities in reliance on conduct which, however deceitful, is immaterial to the operative reason for the pecuniary loss, he has failed to prove the requisite loss causation. *Currie v. Cayman Resources Corp.* (11th Cir. 1988), 835 F.2d 780, 785.

Defendant further argues that plaintiff fails to show how any of its alleged omissions about Gateway's potential risk are connected with mismanagement or conversion alleged in other parts of the complaint against Gateway officials. In fact, defendant argues, plaintiff does not specify any potential risk defendant could have warned him about.

In response, plaintiff argues that the Federal cases involve Federal securities law and are therefore inappropriate for comparisons. With regard to *Lane*, plaintiff distinguishes the case, noting that plaintiff there was a private security guard who sued the City of Harvey for not providing him with training, as it had done voluntarily in the past with other private security guards. There, plaintiff argues, no relationship existed between the city and the security guard. Here, plaintiff notes, the defendant and Gateway "worked hand in glove." But this comparison is in error. To properly compare the parties in the two cases, plaintiff should also match plaintiff and defendant in this case and consider their relationship, not compare the relationship of two defendants. In this case, plaintiff contacted defendant to purchase a limited partnership, but the record reveals no further relationship.

Our review of the complaint shows plaintiff failed to state what defendant could have done differently to warn him of any potential risks or even what risks existed. Plaintiff does, however, allege that he believes he would not have been accepted as an investor if defend-

ant had not negligently filled out the investor subscription form.

■■ This court must determine whether the trial court's denial of leave to file a third amended complaint was in error. Absent a clear abuse of discretion, the decision will be upheld. Twice the trial court found plaintiff failed to allege a proximate cause between his alleged injury and defendant's actions. Plaintiff has not shown how that decision was in error.

■■ We also point out that after plaintiff's second amended complaint was dismissed, the trial court stated that plaintiff could seek leave to file an amended complaint before the order became final July 8, 1989. It was not until September 21, 1989, that plaintiff moved to file a third amended complaint. Timeliness is a factor to be considered in allowing an amendment to be filed, though leave to file an amendment should not be denied on the sole basis that it is not timely. *Tamalunis*, 185 Ill. App. 3d at 187.

■■ Finally, defendant notes that plaintiff seeks damages in the amount of Rosengard's guarantee to Mellon Bank. Plaintiff's complaint, however, speaks only of a lawsuit pending against him brought by Mellon Bank. The record does not show a judgment against plaintiff. His complaint states that he "may now be liable to the Mellon Bank for an amount equal to his investment in the limited partnership." Even if we were to find defendant liable, plaintiff failed to allege any pecuniary loss, only potential pecuniary loss.

We find no abuse of discretion by the trial court and therefore affirm its decision to deny plaintiff leave to file his third amended complaint.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.